**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**SHARON NIGHTINGALE**

 **VS.**                                                                    **C.A. No: 26-**

**CITY OF PROVIDENCE, by and through**                **JURY TRIAL DEMANDED**
**its Treasurer, SHOMARI HUSBAND, and**
**SCOTT BARR,**
**individually and in his capacity as principal,**
**Classical High School; and**
**JAVIER MONTANEZ, individually and in his**
**capacity as Superintendent of Schools;**
**ANGELICA INFANTE-GREEN,**
**in her capacity as Rhode Island Commissioner of**
**Elementary and Secondary Education; and**
**and JOHN AND JANE DOES 1-10 and**
          **Defendant**

## _COMPLAINT_

### Introduction

1.     This is a Complaint seeking vindication of Plaintiff Sharon Nightingale's rights

pursuant to Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act, as well

as her rights under the Family Medical Leave Act (FMLA), 29 U.S.C. §  2601 et seq., as well as

her right to be free from tortious interference with her employment.  Plaintiff also asserts breach of

contract claims. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § § 1331 and

1367.

2.     Plaintiff has duly served the City Council of the City of Providence with notice of

her claim as mandated by R.I. General Laws. § 45-15-5, but has received no satisfaction.

### Parties

3.     Plaintiff, Sharon Nightingale, was at all times relevant to this Complaint a Secondary

Math Teacher employed by Defendant City of Providence's School Department.

4.      Defendant City of Providence is a municipal corporation duly organized under the laws of the State of Rhode Island.

5.      At all times relevant to this Complaint, Scott Barr was the Principal of Classical High School, a secondary school operated by the City of Providence.

6.      At all times relevant to this Complaint, Defendant Javier Montanez was the Superintendent of Schools in the City of Providence, Rhode Island.

7.      Defendant Angelica Infante-Green is the Commissioner of Elementary and Secondary Education for the State of Rhode Island and is responsible for the care, control and custody of the Providence School Department pursuant to the October 15, 2019 Order of Control and Reconstitution in *In Re Providence Public School District,* RIDE No. 19-089 (the "October 15 Order"); the Decision and Order of the Council on Elementary and Secondary Education (the "Council") dated July 23, 2019; and *The Paul W Crowley Rhode Island Student Investment Initiative,* R.I. Gen. Laws§ 16-7.1- 5 (the "Crowley Act").

### Facts

8.      Plaintiff was first hired as a teacher in the Providence School Department in November, 2007.

9.      Plaintiff attained tenure in the Providence School Department in or about June, 2011.

10.      Under Rhode Island law, a teacher attains tenure after completing three annual contracts within five (5) successive school years.

11.      Under Rhode Island law, a teacher who attains tenure in one district, then transfers to another district without interruption in their teaching career, attains tenure in the new district after two (2) years of service.

12.      During the school year 2017-2018, Plaintiff took a leave of absence from the Providence School Department to take a position in the Barrington Public Schools.

13.     Plaintiff then resigned  in February, 2018 from her position in the Providence Public Schools, and then took a teaching position in the Barrington Public Schools for the school year 2018-2019.

14.     Plaintiff was then employed in the Scituate Public Schools for the school year 2019-2020.

15.     Plaintiff was then re-employed as a teacher in the Providence Public Schools in September, 2020, and assigned to Classical High School.

16.     Plaintiff's position at Classical High School for school year 2020-2021 was referenced as a "long term substitute" position, but in fact was a vacant position, and therefore Plaintiff should have been deemed to be under an annual contract for the 2020-2021 school year.

17.     In May, 2021, Plaintiff was officially hired to a permanent teaching position at Classical High School.

18.     Plaintiff was interviewed by Defendant Barr and Assistant Principal Brian Baldizar.

19.     For the entire first year of Plaintiff's employment at Classical, Plaintiff enjoyed a positive relationship with Defendant Barr.

20.     Defendant Barr repeatedly praised Plaintiff's job performance, referring to her as the "Tom Brady" of Classical's Mathematics Department

21.     Plaintiff received a positive evaluation for the school year 2021-2022 from Assistant Principal Baldizar.

22.     At the conclusion of the 2021-2022 school year, Plaintiff was informed that she was "off cycle" for evaluation purposes because she was a tenured teacher.

23.     In Rhode Island, non-tenured teachers must be evaluated every school year, while tenured teachers are only evaluated once every three or four years, depending on their rating.

24.     By stating that Plaintiff was "off cycle" for evaluation purposes, Providence was

acknowledging that Plaintiff had tenure status.

25. Plaintiff continued in her teaching position at Classical High School for the 2022-2023 school year.

26. In or about August, 2023, Providence informed Plaintiff that she was not a tenured teacher.

27. Providence's assertion that Plaintiff was not a tenured teacher was incorrect, because Plaintiff had completed three annual contracts, during the years 2020-2021, 2021-2022, and 2022-2023, and therefore had tenured status.

28. In or about November 21, 2023, Plaintiff injured her back while moving boxes of items for her classroom due to construction in her regular classroom.

29. Plaintiff's back injury substantially limited her in major life activities, including but not limited to standing, walking, working, thinking and concentrating.

30. Plaintiff returned to work on or about April 22, 2024.

31. Upon Plaintiff's return, Defendant Barr began treating Plaintiff in a hostile fashion.

32. Defendant Barr repeatedly singled Plaintiff out for harassing remarks relating to her disability and need for sick leave, including but not limited to "you made it in today," or "that's nice that you were able to come in."

33. When making these remarks, Defendant Barr's tone was mocking, sarcastic, and dismissive.

34. After Plaintiff returned from leave due to her back injury, she needed to take an additional two days off to receive follow-up care.

35. On the next to last day of school, Barr changed Plaintiff's room assignment from a large room with a great deal of storage space and windows, to small windowless storage room.

36. Barr had previously moved another teacher to undesirable location after she filed a

grievance.

37. Plaintiff emailed Barr to discuss the room change on the last day of school, but he did not answer.

38. Plaintiff emailed Barr again to discuss the room change, but he still did not answer.

39. Plaintiff went to the main office to try to speak to Barr but he did not acknowledge her.

40. On or about September 23, 2024, Barr came to Plaintiff's room while she was teaching, stood in front of her, and reprimanded Plaintiff in front of students for having sent an email requesting the graphing calculators that were needed for her AP Statistics class.

41. Barr, along with other administrators, continued to make remarks regarding Plaintiff's need for days off for follow-up medical treatment for her back.

42. Barr would also ostracize Plaintiff in front of other teachers, speaking with them but ignoring Plaintiff.

43. As a result of Barr's behavior, Plaintiff stopped signing in for work in the office, and instead used the portal.

44. Barr also instructed at least one of Plaintiff's colleagues not to speak to her.

45. Also as a result of Barr's behavior, Plaintiff stayed in her classroom to avoid Barr.

46. In December, 2024, Plaintiff received an excellent evaluation from an assistant principal Michael Marino.

47. Plaintiff required a leave of absence form January 3, 2025 to February 22, 2025 to attend to the serious illness of her daughter.

48. Plaintiff also required a leave of absence beginning February 6, 2025 to due her own outpatient treatment for a medical condition.

49. Shortly after taking the leave of absence in 2025, Barr recommended Plaintiff's non-

renewal as a non-tenured teacher, stating that there were better teachers available.

50. The Superintendent of Schools, without challenging Barr, in turn recommended to the Commissioner of Education that the Plaintiff be non-renewed, stating that there were better teachers available.

51. The Commissioner accepted the Superintendent of Schools' recommendation to non-renew Plaintiff's employment, without challenge.

52. Defendants erroneously treated Plaintiff as a non-tenured teacher who could be non-renewed because of a belief that there were better teachers available.

53. Plaintiff was a tenured teacher whose employment could not be terminated without just cause.

54. Defendants lacked just cause to terminate Plaintiff's employment.

55. The stated reason for the recommendation to non-renew Plaintiff's employment was a pretext for discrimination based upon Plaintiff's disability and/or her need for medical leave, as well as retaliation for having reported a workplace injury and submitting a worker's compensation claim.

### COUNT I – RHODE ISLAND CIVIL RIGHTS ACT
### (R.I.G.L. § 42-112-1 *et seq.*)

56. Plaintiff incorporates the averments made in the preceding Paragraphs as if fully restated therein.

57. Plaintiff was a qualified person with a disability as defined under statute.

58. Plaintiff's work-related back injury in November, 2023 substantially limited Plaintiff in major life activities such as standing, walking, and moving.

59. Despite Plaintiff's work-related back injury in November, 2023, Plaintiff remained capable of performing the material duties of her position, with an accommodation in the form of a

brief leave of absence.

60.     Defendants retaliated against Plaintiff by subjecting her to a hostile work environment and terminating her employment.

61.     As a direct and proximate result of the illegal activity of Defendants, Plaintiff has suffered and will continue to suffer damages, including pecuniary and non-pecuniary losses, attorney's fees and costs.

62.     The actions of Defendants were willful, malicious, wicked, and wanton and for the good of society must be punished.

## COUNT II
## (BREACH OF CONTRACT – GOOD FAITH AND FAIR DEALING)

63.     Plaintiff restates the allegations in the Paragraphs above as if fully restated herein.

64.     Plaintiff had a contract with Defendant City of Providence, which contained an implied covenant of good faith and fair dealing.

65.     Defendant City of Providence subjected Plaintiff to a hostile work environment and terminated Plaintiff in retaliation for her having asserted that she had been injured in the workplace and for having submitted a worker's compensation claim..

66.     Said action of subjecting Plaintiff to a hostile work environment and then terminating her, in retaliation for her having asserted a workplace injury and submitting a worker's compensation claim, was in clear violation of the implied covenant of good faith and fair dealing, as well as strong public policy.

67.     As a direct result of the actions of Defendant City of Providence, Plaintiff has suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT III
## FAMILY MEDICAL LEAVE ACT, 29 U.S.C. §  2601 *ET SEQ*

68.    Plaintiff realleges those allegations contained in the Paragraphs above as if fully restated therein.

69.    Defendants were "employers" as that term is defined under 29 U.S.C. § 2611(2).

70.    Plaintiff requested leave for her own and her family member's "serious health condition" as defined under 29 U.S.C. § 2611(11).

71.    Plaintiff was entitled to the leaves requested under 29 U.S.C. § 2611 et. seq.

72.    Defendants then retaliated against Plaintiff with respect to that leave by subjecting her to a hostile work environment, then terminating her.

73.    Defendants' stated reason for Plaintiff's termination was a pretext for retaliating against her for exercising her statutory right to sick leave.

74.    Defendants' actions in subjecting Plaintiff to a hostile work environment, and then terminating her employment, constituted retaliation for the Plaintiff's having obtained leave, in violation of 29 U.S.C. § 2615.

75.    The conduct of Defendants was undertaken with a reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, and has unlawfully deprived the Plaintiff of her employment, income, benefits, privileges, promotions, and other benefits accruing to the employment relationship, as well as caused harm to her reputation, humiliation, and physical and emotional injury.

76.    The actions of Defendants were willful, malicious, wicked, and wanton and for the good of society must be punished.

### COUNT IV – § 28-48-1 *et seq.*
### (RHODE ISLAND PARENTAL AND FAMILY MEDICAL LEAVE ACT)

77.    Plaintiff restates all allegations made in the above-referenced paragraphs as if fully restated herein.

78.    Plaintiff was an "employee" as that term is defined under R.I.G.L. § 28-48-1(2)

79.    Defendants were "employers" term is defined under R.I.G.L. § 28-48-1(3).

80.    In November, 2023 Plaintiff needed to take sick leave due to a work-related injury due to a "serious illness," as defined under R.I.G.L. § 28-48-1(7).

81.    In January, 2025, Plaintiff needed to take leave to attend to her daughter's serious illness, as defined under R.I.G.L. § 28-48-1(7).

82.    In February, 2025, Plaintiff needed to take leave due to her own serious illness, as defined under R.I.G.L. § 28-48-1(7).

83.    Plaintiff was entitled to the requested leaves pursuant to R.I.G.L. § 28-48-2.

84.    Defendants retaliated against Plaintiff for exercising her statutory right to sick leave, by subjecting her to a hostile work environment and then terminating her.

85.    Defendants' stated reason for Plaintiff's termination was a pretext for retaliating against her for exercising her statutory right to sick leave.

86.    Defendants' actions of subjecting Plaintiff to a hostile work environment, and then terminating Plaintiff constituted an interference with the Plaintiff's rights to leave for a "serious illness," and/or retaliation for the Plaintiff's exercising her rights to said leave, in violation of R.I.G.L. § 28-48-5.

87.    Defendants' wrongful, malicious, intentional, outrageous, wicked and wanton actions complained of herein were taken intentionally for the purpose of causing, and had the intended effect of causing, Plaintiff to suffer extreme and severe emotional distress.

## COUNT V --
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

88.    Plaintiff incorporates the averments made in the preceding Paragraphs as if fully restated therein.

89.    Plaintiff derived economic advantage as a result of her employment by the City of Providence.

90.    Plaintiff had an expectation of continued employment with the City of Providence.

91.    Defendants Barr and Montanez knew or should have known of the economic advantage derived by Plaintiff from her employment.

92.    Defendant Barr and Montanez willfully and deliberately interfered with the economic advantage derived from Plaintiff's employment.

93.    Defendants Barr and Montanez used improper means, and had improper motives in tortuously interfering with Plaintiff's employment.

94.    As a direct and proximate result of the illegal activity of Defendants  Barr and Montanez, Plaintiff has suffered and will continue to suffer damages, including pecuniary and non-pecuniary losses, attorney's fees and costs.

95.    The actions of Defendants Barr and Montanez were willful, malicious, wicked, and wanton and for the good of society must be punished.

## COUNT VI – DECLARATORY RELIEF

96.    Plaintiff incorporates the averments made in the preceding Paragraphs as if fully restated therein.

97.    This Count is brought under the R.I. Gen. Laws § 9-30-1 et seq., the Uniform Declaratory Judgment Act.

98.     There is an active and live controversy as to whether Plaintiff is a tenured teacher in the Providence Public Schools.

99.     Notwithstanding Providence's non-renewal, Plaintiff was a tenured teacher whose employment could not be terminated without just cause.

100.    Providence lacked just cause to terminate Plaintiff's employment.

WHEREFORE, Plaintiff seeks a declaration that she was a tenured teacher, and that Providence's attempt at non-renewal was null and void.

Plaintiff
By her attorneys,


/s/ Stephen M. Robinson
Stephen M. Robinson #2103



/s/ Vicki J. Bejma
Vicki J. Bejma #6498
Robinson & Clapham
123 Dyer Street, Suite 135
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
vbejma@smrobinsonlaw.com